

```
                    FILED
                  SEP 10 2018
           UNITED STATES BANKRUPTCY COURT
            EASTERN DISTRICT OF CALIFORNIA
```

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>MICHAEL and STACEY SIMONS,<br><br>　　　　Debtor.<br>_____<br><br>AFSHIN KOOSHKEBAGHI,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>MICHAEL and STACEY SIMONS,<br><br>　　　　Defendants.<br>_____ | Case No. 17-21035-A-13<br><br><br><br><br><br>Adv. No. 17-2083<br><br>Date: August 9, 2017<br>Time: 9:00 a.m.<br>Dept: A |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter was tried by the court on August 9, 2018. Plaintiff Afshin Kooshkebaghi appeared with his attorney, Yasha Rahimzadeh, and defendants Michael and Stacey Simons appeared with their attorney, Richard Kwun.  Having considered the

evidence presented at trial, the court now makes its findings of fact and conclusions of law.

This is an action to determine the dischargeability of a debt as well as to deny the defendants' chapter 7 discharge. It is a core proceeding in which this court may enter a final judgment. 28 U.S.C. § 157(b)(2)(I) & (J).

For the reasons explained below, the court determines that the debt referred to in the complaint is nondischargeable as to defendant Michael Simons but there is no basis to deny the defendants' discharge in its entirety. A separate judgment will be issued.

### Findings of Fact

1. The defendant, Michael Simons, purchased a used 2005 Ford F350 truck in August 2015 from the plaintiff, Afshin Kooshkebaghi, for $21,000. The defendant paid $15,000 of the purchase price and agreed to pay an additional $6,000 within a reasonable time.

2. Contemporaneously with the exchange of the $15,000, the plaintiff and the defendant went to an office of the California Department of Motor Vehicles (the DMV) to report the sale and obtain a certificate of title in the name of defendant Michael Simons. They gave the DMV a bill of sale. However, that bill of sale incorrectly reported the sale price as $15,000, not $21,000. The certificate of title issued to Mr. Simons on September 2, 2015, nonetheless reflected that the plaintiff held a lien on the truck.

///

3.  Mr. Simons received possession of, and title to, the truck. Soon thereafter, the plaintiff began sending text messages to Mr. Simons asking for the remaining $6,000. In response, Mr. Simons reiterated his promise to pay an additional $6,000 and did not dispute this obligation. For instance, in response to a September 18, 2015 text from the plaintiff asking when the $6,000 would be paid, Mr. Simons responded, "Like I said, I will contact you in acouple [sic] of weeks once I have an idea of how much I will be making."

4.  This was followed by a text message on October 13, 2015 from Mr. Simons to the plaintiff: "I apologize for not getting back to you last night, family emergency. I do not feel comfertable [sic] giving you a post dated check as I have been screwed badly doing this in the past. I will be im [sic] touch with you by the 10th of November to get you money. Please do not call me as I am working and will not answer." Despite many promises, Mr. Simons never paid the $6,000.

5.  Unknown to the plaintiff, Mr. Simons had been in contact with the DMV soon after the issuance of the September 2, 2015 certificate of title. Mr. Simons demanded that the DMV reissue the title without the plaintiff being identified as a lien holder. Mr. Simons informed the DMV that the purchase price for the truck had been $15,000 and he had paid the $15,000. This communication with the DMV was without the plaintiff's knowledge and during the period of time Mr. Simons was promising payment of the additional $6,000 in text messages.

6.  In August 2016, after tiring of Mr. Simons' empty promises of payment, the plaintiff filed a state court collection

1 action. On November 8, 2016, the state court entered a judgment
2 after trial against Mr. Simons for $6,000 and $185 in court
3 costs. Hence, another court previously determined that the sale
4 price was $21,000, not $15,000, and that the additional $6,000
5 was due to the plaintiff.

6 　　7. In November 2016, the DMV cancelled the certificate of
7 title identifying the plaintiff as the lien holder and issued a
8 new title to Mr. Simons reflecting that the truck was not
9 encumbered by any lien.

10 　　8. Within a month of receiving clear title, in December
11 2016, Mr. Simons sold the truck to Carmax for $8,000. At this
12 point, Mr. Simons was in financial distress. The sale proceeds
13 were used to pay back rent and other household expenses

14 　　9. It is unclear from the record whether the state court
15 judgment was entered before the DMV released the plaintiff's
16 lien. It is clear, however, that the judgment was entered before
17 Mr. Simons sold the truck and kept the proceeds without paying
18 the plaintiff.

19 　　10. There is nothing in the record convincing the court
20 that the plaintiff was aware of Mr. Simons' efforts to have the
21 DMV release his lien on the truck. While Mr. Simons testified
22 that he sent a DMV form by certified mail to the plaintiff
23 explaining his position that, because he had paid $15,000 for the
24 truck, he was entitled to clear title, the court finds that no
25 such form was sent to the plaintiff.

26 　　11. First, there is no convincing evidence that such a
27 form, or anything else, was mailed to the plaintiff. Neither a
28 copy of the form nor proof of its mailing was introduced into

1 | evidence.

12. Second, Mr. Simons was entitled to a release of the plaintiff's lien only if the purchase price was $15,000. But, the purchase price was $21,000 and he owed an additional $6,000. In his text messages to the plaintiff, which were contemporaneous with Mr. Simons' application to the DMV to release the lien, Mr. Simons admitted he owed the additional $6,000, promised payment at a later date, and finally admitted he was unable to pay that sum.

13. Third, Mr. Simons did not claim in his text messages that he was entitled to clear title without payment of the $6,000, nor did he alert the plaintiff that he was asking the DMV to release his lien.

14. Fourth, Mr. Simons participated in the state court trial. While the record of that trial is slim, that court clearly did not believe the sale price was $15,000. It ordered payment of the additional $6,000 to the plaintiff.

15. Fifth, even if Mr. Simons somehow honestly believed he was under no obligation to pay the $6,000 and therefore was entitled to clear title, he was disabused of that notion by the state court in November 2016. Despite this, he sold the vehicle in December 2016 without paying the plaintiff.

16. The court finds that Mr. Simons realized in August 2015 that the plaintiff had made a mistake on the bill of sale filed at the DMV. It mistakenly reported the sale price as $15,000 rather than $21,000. Mr. Simons then sought to exploit that mistake. While making promises to the plaintiff that he would pay the $6,000, the plaintiff informed the DMV that the total

purchase price had been $15,000 and that he had paid this amount. He therefore demanded that the DMV cancel the plaintiff's lien on the truck. This was done without the plaintiff's knowledge.

17. In December 2016, the plaintiff sought to enforce the judgment against Michael Simons' bank account at U.S. Bank but was unsuccessful because the account had been closed.

18. Mr. and Mrs. Simons filed their underlying chapter 7 case on February 20, 2017. The plaintiff is listed as an unsecured creditor on Schedule E/F. Despite this listing, the statement of financial affairs indicates the plaintiff satisfied his judgment from the levy on the bank account.

19. The statement of financial affairs discloses that in December 2016, the defendants sold the vehicle to Carmax for $8,000. Mr. Simons testified that he used the sale proceeds to catch up delinquent household bills. However, the statement of financial affairs does not list any payments to creditors larger than $600 during the 90-day period before bankruptcy.

20. During the meeting of creditors in April 2017, the plaintiff's attorney questioned Mr. Simons to determine how he was able to sell the truck without first satisfying the plaintiff's lien. Mr. Simons testified that he had successfully asked the DMV to release the lien prior to the sale of the truck to Carmax. This was the plaintiff's first notice that his lien had been released.

21. The plaintiff filed this adversary proceeding on May 22, the last day to file complaints pursuant to 11 U.S.C. §§ 523 and 727. The first amended complaint was filed on August 6, 2017. Dockets 20 & 23.

22. To the extent any of the conclusions of law below are findings of fact, they are incorporated by reference as findings of fact.

Conclusions of Law

23. To the extent any of the foregoing findings of fact are conclusions of law, they are incorporated by reference as conclusions of law.

24. To deny the defendants' discharge under 11 U.S.C. § 727(a)(4)(A), the plaintiff must prove that "the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account."

25. The complaint alleges that certain representations in the schedules and statement of financial affairs, signed by the defendants under the penalty of perjury, were false and designed to defraud.

    a. First, the answer to question 10 of the statement of financial affairs is false inasmuch as the levy on the defendants' bank account netted nothing. That bank account had been closed prior to the levy. No money had been seized by the plaintiff's garnishment.

    b. Second, the defendants' answer to question 9 omitted disclosure of the plaintiff's state court lawsuit.

    c. Third, in response to question 6 of the statement of financial affairs, the defendants did not disclose payments to any creditors even though at the meeting of creditors the defendants testified that they had used the $8,000 received from the sale of the truck to pay

1       delinquent bills.

2   26. Former counsel for the defendants explained that he had misunderstood the defendants when they informed him that they received a notice that their bank account had been levied. He had understood this to mean that money from the account had actually been seized. In fact, it meant only that the plaintiff had attempted to satisfy his judgment. It did not mean the levy had been successful. Counsel had understood otherwise and the defendants relied upon him to complete the schedules.

10   27. Further, Schedule E/F correctly listed the plaintiff's claim as due and owing. This is not a case where the debtor reported that a judgment had been paid and omitted the judgment creditor from the schedules. The defendants did not attempt to obtain a discharge without informing the plaintiff of their bankruptcy case.

16   28. And, while the answer to question 9 omits reference to the plaintiff's state court suit, the answer to question 10 discloses the levy which presupposes the existence of a lawsuit and a judgment. Also, the listing of the claim on Schedule E/F again makes reference to the fact that it is based on a "levy," a term that presupposes a judgment.

22   29. Finally, at trial, Mr. Simons testified that the bills he paid with the sale proceeds were all less than $600. Therefore, question 6 did not require disclosure of these payments.

26   30. The court concludes that the misstatements and omissions in the schedules and statement of financial affairs, while false and inaccurate as described above, represent innocent

mistakes, that were not meant to defraud and were not material.

31. 11 U.S.C. § 523(a)(6) provides that an individual is not discharged "from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity."

32. To prevail on its 11 U.S.C. § 523(a)(6) claim, the plaintiff must show that the injury was both willful and malicious. Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998); Baldwin v. Kilpatrick (In re Baldwin), 249 F.3d 912, 917 (9th Cir. 2001).

33. The injury element of 11 U.S.C. § 523(a)(6) requires harm to the plaintiff's person or property. Quarre v. Saylor (In re Saylor), 108 F.3d 219, 221 (9th Cir. 1997) (citing Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992)).

34. There has been an injury in this case. Mr. Simons caused the cancellation of the plaintiff's lien on the truck to the his detriment. Mr. Simons then sold the truck and kept the sale proceeds. Mr. Simons converted the plaintiff's collateral.

35. The term willful means a deliberate or intentional injury. Kawaauhau, 523 U.S. at 61. This requires proof not only that the defendant intended to act, but that the injury was also intended by the defendant. Id.

36. The intent aspect of a willful injury focuses on the debtor's state of mind. It is a subjective inquiry. Carrillo v. Su (In re Su), 290 F.3d 1140, 1144-46 (9th Cir. 2002); Hughes v. Arnold, 393 B.R. 712, 718 (E.D. Cal. 2008); Ormsby v. First American Title Co. of Nevada (In re Ormsby), 386 B.R. 243, 250 (E.D. Cal. 2008). The debtor must have had the subjective intent to harm or the subjective belief/knowledge that harm was

substantially certain to result from his conduct. <u>Su</u> at 1142-44.

37. A willful injury is not necessarily malicious for purposes of 11 U.S.C. § 523(a)(6). A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. <u>Carrillo v. Su (In re Su)</u>, 290 F.3d 1140, 1146-47 (9th Cir. 2002) (citing <u>In re Jercich</u>, 238 F.3d 1202, 1209 (9th Cir. 2001)); <u>see also</u> <u>Jett v. Sicroff (In re Sicroff)</u>, 401 F.3d 1101, 1106 (9th Cir. 2005). "Within the plain meaning of this definition, it is the wrongful act that must be committed intentionally rather than the injury itself." <u>Sicroff</u> at 1106.

38. As laid out in the findings of fact, the circumstances here permit the inference that Mr. Simons, despite knowing that he owed the plaintiff another $6,000, surreptitiously caused the DMV to release the lien securing that payment. While doing so, he never informed the plaintiff that he disputed the $6,000 obligation or the plaintiff's security interest in the truck. In fact, he strung the plaintiff along by indicating he would attempt to pay the $6,000 when he could. Then, after obtaining the release of the lien, he sold the truck and spent the sale proceeds despite having lost the state court lawsuit confirming that he owed the $6,000 to the plaintiff.

39. When doing this, Mr. Simons acted intentionally and with the purpose of depriving the plaintiff of his security interest in the truck which had a value in excess of his $6,000 obligation. He acted wrongfully and without any just cause or excuse. The excuse offered was that the bill of sale reported that the sale was for $15,000 and $15,000 was paid. However, Mr.

Simons understood that the bill of sale was not correct and he took advantage of the plaintiff's mistake. And, even if the court is wrong in this assessment, before Mr. Simons sold the truck, the state court determined that he still owed the plaintiff the $6,000. He nonetheless later sold the truck and pocketed the $8,000.

    40. Therefore, the court concludes that the state court judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). However, this exception to discharge pertains only to Mr. Simons. The plaintiff produced no evidence that Mrs. Simons participated in the purchase of the truck, the release of the lien, or the sale of the truck. Indeed, the state court judgment does not identify Mrs. Simons as a defendant. As to her, the debt is dischargeable.

    Counsel for the plaintiff shall lodge a conforming judgment.

Dated: *10 Sept. 2018*

By the Court

Michael S. McManus
United States Bankruptcy Judge

# United States Bankruptcy Court
# Eastern District of California

## Certificate of Mailing

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities at the addresses shown below or on the attached list.

Michael James Simons
114 Elkins Cir.
Folsom CA 95630

Stacey Michele Simons
114 Elkins Cir.
Folsom CA 95630

Richard Kwun
PO Box 292
Sacramento CA 95814

Yasha Rahimzadeh
980 9th St 16th Fl
PMB 1021
Sacramento CA 95814

Dated: 9/10/2018

By:_____
Deputy Clerk
Sarah Head